IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNIVERSITY OF NORTH CAROLINA HOSPITALS AT CHAPEL HILL, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED HEALTHCARE OF NORTH CAROLINA, INC.; UNITED HEALTHCARE INSURANCE COMPANY OF THE RIVER VALLEY; and UNITED HEALTHCARE INSURANCE COMPANY, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

1:25-cv-00107

**<u>MEMORANDUM OPINION AND ORDER</u>**

Lindsey A. Freeman, United States District Judge.

In 2022, the Supreme Court invalidated final agency action undertaken by the

Department of Health and Human Services ("HHS") in 2018 that "substantially reduced

the reimbursement rates" for certain prescription medications for "Section 340B

hospitals." *See Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 727 (2022). Defendants United

Healthcare of North Carolina, Inc., United Healthcare Insurance Company of the River

Valley, and United Healthcare Insurance Company (collectively, "United") claim that

everything that happened subsequent to *Becerra* dictates that this state-law breach-of-

contract case brought by Plaintiff University of North Carolina Hospitals at Chapel Hill

("UNC Hospitals") must be heard by this Court as "arising under" federal law. *See* Dkt. 1 ¶¶ 16-30 (citing 28 U.S.C. § 1331).

United is incorrect. Thus far, every court that has considered United's arguments (or the arguments of similar defendants) has determined remand was appropriate. *See generally NYU Langone Hosps. v. UnitedHealthcare Ins. Co.*, No. 24-cv-4803, 2025 WL 252454 (S.D.N.Y. Jan. 21, 2025); *Shands Teaching Hosp. & Clinics, Inc. v. Sunshine State Health Plan*, No. 24-cv-197 (N.D. Fla. Jan. 27, 2025) ("*Shands I*") (unpublished order);[1] *Shands Jacksonville Med. Ctr., Inc. v. Aetna Health, Inc.*, 768 F. Supp. 3d 1357 (N.D. Fla. 2025) ("*Shands II*"); *Health Care Auth. for Baptist Health v. UnitedHealthcare of Ala., Inc.*, No. 2:24-cv-774, 2025 WL 1884796 (N.D. Ala. July 8, 2025); *Baptist Hosp. of Miami, Inc. v. Preferred Care Network, Inc.*, No. 25-cv-22245, 2025 WL 2104280 (S.D. Fla. July, 28, 2025); *Nash Hosps., Inc. v. UnitedHealthcare of N.C., Inc.*, No. 5:25-cv-38, 2025 WL 2143743 (E.D.N.C. July 29, 2025). This Court discerns no basis to depart from that consensus, and so, for the reasons stated below, UNC Hospitals' motion to remand back to state court is GRANTED.

## FACTUAL BACKGROUND

"This is a breach of contract case," Dkt. 1 ¶ 2, revolving around a contract between UNC Hospitals, an "academic medical center and quaternary care hospital located in Orange County, North Carolina," Dkt. 1-1 ("State Court Complaint") ¶ 1, and an

---

[1] *Shands I* is located on this Court's docket (at Dkt. 21-1), as Exhibit 1 to UNC Hospitals' reply brief.

insurance company and its affiliates, United, *id.* ¶¶ 3-5.  Both parties participate in the Medicare Advantage Program that "runs parallel to Medicare."  *Baptist Hosp.*, 2025 WL 2104280, at *1 (citation omitted).  Under the Medicare Advantage Program, Medicare-eligible patients may "opt into private health insurance plans" called Medicare Advantage Plans offered by Medicare Advantage Organizations ("MAOs").  *Baptist Health*, 2025 WL 1884796, at *2.  United, as an MAO, "provide[s] coverage in excess of the coverage provided by Medicare" to its beneficiaries.  *Id.* (internal quotation omitted).  The contract provision at dispute in this case involves the alleged incorporation of the federal pricing structure for a particular subsection of outpatient prescription drugs provided by UNC Hospitals to United's members.  *See* Dkt. 1-1, State Court Complaint ¶¶ 14-32.

HHS[2] is required by law to "set reimbursement rates for certain outpatient prescription drugs provided by hospitals" to Medicare beneficiaries.  *Becerra*, 596 U.S. at 728 (citing 42 U.S.C. § 1395*l*(t)(14)).  HHS has two options regarding the methodology for setting prices.  Under the first option, if HHS "conduct[s] a survey into hospitals' acquisition costs," it "may set reimbursement rates based on the hospitals' 'average acquisition cost' for each drug."  *Id.* at 728 (quoting 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I)).

---

[2] The Medicare reimbursement system forming the background of the parties' dispute in this case is administered by the Centers for Medicare and Medicaid Services ("CMS"), a division of HHS.  *Cf. MacKenzie Med. Supply, Inc. v. Leavitt*, 506 F.3d 341, 343 (4th Cir. 2007).  To streamline its analysis, and consistent with the Supreme Court's approach in *Becerra*, the Court employs the acronym for HHS when referring to both HHS broadly and CMS specifically, rather than alternating between the two terms.

Under the second option, which "applies if HHS has not conducted a survey of hospitals' acquisition costs," it "must set reimbursement rates based on 'the average price' charged by manufacturers for the drug, as 'calculated and adjusted by the Secretary [of HHS] as necessary for purposes of' [the] statutory provision." *Id.* at 729 (quoting 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II)). Although HHS never conducted a survey, it promulgated new final rules in 2018 reducing the reimbursement rates for a particular class of hospitals, Section 340B hospitals.[3] *Id.* Ultimately, the Supreme Court invalidated that action in *Becerra*, holding that HHS exceeded its statutory authority in reducing reimbursement rates for Section 340B hospitals without conducting a survey. *See id.* at 737.

But *Becerra* critically only concerned reimbursement rates for "traditional Medicare beneficiaries." *See Shands II*, 768 F. Supp. at 1358. For these beneficiaries, hospitals seek reimbursement directly from the federal government at the rates set by HHS. *Id.; see also Baptist Hosp.*, 2025 WL 2104280, at *2 ("Under traditional Medicare, [HHS] reimburses hospitals for outpatient items and services they provide …."). In contrast, MAOs, like United, are reimbursed by HHS on a per capita basis not tied to specific services rendered to patients holding Medicare Advantage Plans. *Shands II*, 768 F. Supp. 3d at 1358. MAOs in turn pay providers (*e.g.*, hospitals like UNC Hospitals) "as

---

[3] Section 340B hospitals are a special group of hospitals that "generally serve low-income or rural communities." *Becerra*, 596 U.S. at 727.

4

services are rendered based on privately negotiated contracts" separate and apart from the federal reimbursement rates established by HHS.  *See id.*

On remand from the Supreme Court, the District Court for the District of Columbia in *Becerra* vacated HHS's 340B reimbursement rule prospectively from September 28, 2022, onward.  *See Am. Hosp. Ass'n v. Becerra*, No. 18-cv-02084, 2022 WL 4534617, at *5 (D.D.C. Sept. 28, 2022).  However, the issue of HHS's underpayments to 340B hospitals under the unlawful reimbursement rates from 2018 to 2022 remained outstanding.  In a subsequent order, the District Court for the District of Columbia remanded the matter to HHS.  *See Am. Hosp. Ass'n v. Becerra*, No. 18-cv-02084, 2023 WL 143337, at *3, *6 (D.D.C. Jan. 10, 2023).  HHS promulgated a new final rule compensating Section 340B hospitals for prescriptions issued to traditional Medicare beneficiaries through lump-sum payments as a remedy for its underpayment from 2018 to 2022.  *See Medicare Program; Hospital Outpatient Prospective Payment System: Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018-2022*, 88 Fed. Reg. 77150 (Nov. 8, 2023).

But critical to this case, "no action was taken with respect" to "Medicare Advantage Plans" managed by MAOs like United, "whose rates were governed by their private contracts with providers [like UNC Hospitals] and could not be mandated by HHS."  *Shands II*, 768 F. Supp. 3d at 1359; *see also* 88 Fed. Reg. at 77184.  Indeed, "HHS has no role in setting the contracted rates" that an MAO may reach with a healthcare

provider. *Shands II*, 768 F. Supp. 3d at 1358 (citing 42 U.S.C. § 1395w-24(a)(6)(B)). But while private contracts, and not HHS, governed reimbursement rates between MAOs and healthcare providers, in the wake of *Becerra*, healthcare providers began to bring state-law breach-of-contract lawsuits against MAOs, arguing that the parties' contracts incorporated the federally-mandated reimbursement rates set by HHS for traditional Medicare beneficiaries. *See* Maurice Wells, et al., *The 340B Reimbursement Battle: What Hospitals and Insurers Need to Know*, Nat'l L. Rev. (Feb. 12, 2025), https://tinyurl.com/2p88h8v (noting that the "regulatory gap" created by *Becerra* and HHS "has resulted in legal disputes over whether MAOs bear" an obligation "to rectify past underpayments" to healthcare providers).

Joining with other providers, UNC Hospitals sued in North Carolina state court asserting breach of contract claims against United. *See generally* Dkt. 1-1, State Court Complaint. UNC Hospitals asserts that United "improperly and unliterally discounted payments for certain of" UNC Hospitals' "covered hospitals." *Id.* ¶ 18. The crux of UNC Hospitals' claims against United is simple. It claims that: (1) the parties' intended to incorporate into their agreement the 340B reimbursement rates set by HHS; (2) United abided by the rates set by HHS between January 2018 and September 2022; (3) *Becerra* determined those rates to be unlawful; and (4) United breached its contract with UNC Hospitals by failing to refund UNC Hospitals for the overpayment it provided to United during that time period. *See id.* ¶¶ 18-34; *see also, e.g.*, *Nash*, 2025 WL 2143743, at *2-3

6

(detailing nearly identical allegations against United brought by another hospital in North Carolina).

According to United, "resolving these allegations requires determining whether United violated federal law." Dkt. 20 at 2. It may also require, according to United, the Court to conduct a deep-dive into "federal administrative law on the legal effect of a federal court decision holding that agency action is unlawful without vacatur." *Id.* So, endeavoring to protect "the federal-state balance approved by Congress," *id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)), United invoked the jurisdiction of this Court by removing UNC Hospitals' lawsuit from North Carolina state court. United asserts that the federal questions allegedly imbedded within UNC Hospitals' state law claims "should be decided in federal court to protect federal interests and to avoid potentially inconsistent rulings in state courts." *Id.*

UNC Hospitals moved to remand back to state court, *see* Dkt. 17, and the parties briefed the merits of that motion, *see* Dkts. 18, 20-21, 23. For the reasons outlined below, the Court grants UNC Hospitals' motion for remand.

## ANALYSIS

This is a state-law breach-of-contract case. It does not become an unbridled foray into federal administrative and healthcare law just because the parties may (or may not) have elected through their contract to incorporate by reference HHS's 340B reimbursement rates. Absent diversity of citizenship, complaints "alleging only state-law

7

claims" do not belong in federal court where, at best, "they merely implicate federal issues." *See Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 209 (4th Cir. 2022).

As the party claiming federal jurisdiction, United bears the burden of establishing that jurisdiction exists. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). The Court must strictly construe removal jurisdiction and resolve all doubts in favor of remand. *See Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008). And the Court must remand the case back to state court if it determines that United has failed to carry its burden to establish subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

United's only potential basis for removal is federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* Dkt. 1 ¶ 16.[4] Because this is a state-law breach-of-contract claim, United faces an uphill battle to establish that this case belongs in federal court under that statute. To invoke federal question jurisdiction under Section 1331, it must be apparent from the face of UNC Hospitals' complaint that its "own cause of action shows that it is based on" federal law. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). In the "vast majority of cases," this inquiry is simple because the plaintiff asserts that

---

[4] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to federal court by a defendant. 28 U.S.C. § 1441(a). However, while the removal statute confers on state-court defendants a *right* to federal jurisdiction, it does not *supply* that jurisdiction. Instead, the statute requires "some independent source of federal jurisdiction." *See Burrell v. Bayer Corp.*, 918 F.3d 372, 378 (4th Cir. 2019); *see also Kokken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction" and thus possess "only that power authorized by Constitution and statute").

"federal law creates [its] cause of action." *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). United argues, however, that this case falls within the "slim category" of cases, *Gunn*, 568 U.S. at 258, where "state law supplies the cause of action," but a federal court is alleged to have jurisdiction "because the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (internal quotation omitted).

In determining that United cannot establish jurisdiction, the Court applies the *Grable-Gunn* test. Under that test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). United must establish all four elements to invoke this Court's jurisdiction. *See Gunn*, 568 U.S. at 258 ("Where *all four* of these requirements are met … jurisdiction is proper …." (emphasis added)). United's arguments fail under the first prong alone.[5]

UNC Hospitals' complaint does not "necessarily raise" a federal question. In the Fourth Circuit, "[a] federal question is necessarily raised under § 1331 only if it is a

---

[5] Although it is unnecessary to address the remaining elements, the Court is persuaded by *Shand I*'s determination that the MAO there, raising substantially the same arguments as United here, failed to establish the third and fourth prongs of the *Grable-Gunn* test. *See Shands I*, No. 24-cv-197, slip op. at 5-8 (N.D. Fla. Jan. 27, 2025).

necessary element of one of the well-pleaded state claims." *Mayor & City Council of Balt.*, 31 F.4th at 209 (internal quotation omitted). To meet that stringent requirement, "*every legal theory supporting the claim*" must require "resolution of a federal issue." *Burrell*, 918 F.3d at 383. "If, on the other hand, each of the … claims is supported by a state-law theory that does not require recourse to federal law, then that claim does not 'arise under' federal law" even if the plaintiff alleges "an alternative federal-law theory that also could prove liability." *Id.*

The parties' dispute may be resolved "without resort to federal law," so no federal question is implicated under *Burrell*. *See* 918 F.3d at 382. As noted in *Nash*, "[w]hether or not the parties intended to tie United's obligations under" their agreement "to a federal standard … is a question of the parties' intent and relationship, and not an issue of federal law." 2025 WL 2143743, at *3. UNC Hospitals' State Court Complaint explicitly alleges that "under the [a]greement, [United] is required to reimburse" UNC Hospitals "for outpatient services, including pharmaceuticals purchased under the 340B Program and used in a hospital outpatient department, as a percentage of the rate required to be paid under the Medicare program." Dkt. 1-1, State Court Complaint ¶ 22. Accordingly, UNC Hospitals' "right to relief" is not "inextricably intertwined with federal law," *see Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 286 (4th Cir. 2022), because it can prove its claims by showing *as a matter of contractual interpretation* that the parties intended to incorporate the rates established by the 340B Program into their contract, *see*

10

*State v. Philip Morris USA Inc.*, 363 N.C. 623, 685 S.E.2d 85, 90 (2009) (when interpreting a contract, the court must look to "the language of the contract itself" to determine "the parties' intent at the moment of execution" (internal citation omitted)). And a finding of breach similarly only hinges on whether *as a matter of contractual interpretation* the contract required United to refund UNC Hospitals. That determination can be made without addressing the contours of the federal remedies promulgated in the wake of *Becerra* to hospitals servicing traditional Medicare beneficiaries. Although there may be "lurking question[s] of federal law" in the background of the parties' dispute, *see Burrell*, 918 F.3d at 382, "[t]he statute and rules governing reimbursement of 340B hospitals are tangential to the core dispute," which is one of contractual intent, *see NYU Langone*, 2025 WL 252454, at *2; *Baptist Hosp.*, 2025 WL 2104280, at *7 ("[J]ust because Plaintiffs' breach of contract claim may require the court to interpret" certain federal laws to "determine whether [they are] incorporated into" the parties agreement, "this does not give rise to federal question jurisdiction").[6]

United's arguments do not persuade the Court that this case requires anything other than interpretation of the parties' contract. *First*, United contends that UNC Hospitals' claims require an analysis into "*Becerra* and the 340B Remedy Final Rule,"

---

[6] Further, because the Supreme Court has already issued an opinion in *Becerra* and HHS's actions on remand "have already taken place, they are already settled law, and they are not themselves in dispute." *Nash*, 2025 WL 2143743, at *4. The parties' lawsuit thus does not even necessarily require "resolution of a federal issue." *See Burrell*, 918 F.3d at 383 (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc)).

which it asserts, "triggered United's obligation to pay additional funds for 340B drugs."

Dkt. 20 at 10, 20-21. But, as explained above, United has "no obligation 'under *Becerra*'"

or HHS's subsequent remedy "to pay the higher rates" to UNC Hospitals. *See Shands II*,

768 F. Supp. 3d at 1359. And the mere fact that UNC Hospitals' claims reference a federal

standard does not alone create federal jurisdiction. *See, e.g.*, *Edwards v. Equifax Information

Servs., LLC*, 1:19-cv-998, 2020 WL 5518590, at *1, *3 (M.D.N.C. Sept. 14, 2020) (state-law

breach-of-contract claim alleging breach of a settlement agreement did not raise a federal

question merely because the underlying dispute concerned a FCRA claim); *Merrell Dow*,

478 U.S. at 805-06, 809-11 (state-law negligence and products-liability actions based on

FDCA labeling standards did not confer federal-question jurisdiction).[7]

*Second*, United asserts that a court "will need to delve into issues of federal

administrative law and vacatur" and assess the legal effects of HHS's final agency action

(issuing lump-sum reimbursements for the 2018-2022 overpayment) to determine

whether breach occurred under the parties' contract. *See* Dkt. 20 at 11-12. Again, United

ignores that "federal law precludes [HHS] from interfering in MAOs' contract

negotiations," so "the 340B remedy has no independent effect on the parties' contractual

---

[7] It is for that reason that United's caselaw citations (Dkt. 20 at 10) are readily distinguishable, as the plaintiffs in those cases were *required* to demonstrate a violation of federal law to succeed on their state-law claims. *See N.Y.C. Health & Hospitals Corp. v. Wellcare of N.Y., Inc.*, 769 F. Supp. 2d 250, 256 (S.D.N.Y. 2011); *Sherr v. S.C. Elec. & Gas Co.*, 180 F. Supp. 3d 407, 417 (D.S.C. 2016); *see also Nash*, 2025 WL 2143743, at *5 (distinguishing *N.Y.C. Health* and *Sherr*).

obligations unless a court finds that it is incorporated into the terms of their private contract." *See Baptist Hosp.*, 2025 WL 2104280, at *5. The parties' agreement, *not federal law*, thus controls the analysis for purposes of the parties' dispute. *See id.*; *see also Shands II*, 768 F. Supp. 3d at 1359 ("[T]he HHS rates applied under the agreement between Shands and Aetna only because the parties agreed to use those rates[.]"). Accordingly, no federal question is necessarily raised by UNC Hospitals' complaint, which merely asserts that: (1) the parties intended to incorporate certain federal standards by reference; and (2) those incorporated standards required United, as a matter of contract, to reimburse UNC Hospitals for certain overcharges paid between 2018 and 2022.

## CONCLUSION

UNC Hospitals brought a claim for breach of contract in North Carolina state court. That lawsuit seeks to redress alleged overpayments to United between 2018 and 2022 in light of *Becerra* and subsequent HHS actions. But that federal background to the parties' dispute does not dictate that this is a federal case. The parties' disagreement hinges on contractual interpretation, not the application of federal law. *Cf. Mayor & City Council of Balt.*, 31 F.4th at 210 ("[S]tate-law claims must hinge on the determination of a federal issue." (internal quotation omitted)). State-law causes of action implicating federal questions confer federal jurisdiction "only in a special and small class of cases." *Burrell*, 918 F.3d at 376 (internal quotation omitted). This case is not one of them.

13

So, for the reasons stated above, the Court GRANTS UNC Hospitals' motion to remand back to the Orange County Superior Court.  It is SO ORDERED.

This the 13th day of March, 2026.

LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE